1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**EASTERN DISTRICT OF WASHINGTON**

8

Case No. 1:14-CV-03123-VEB

9

TERRY DANLEY,

10

Plaintiff,

DECISION AND ORDER

11

vs.

12

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

13

14

Defendant.

15

**I. INTRODUCTION**

16

In April of 2010, Plaintiff Terry Danley applied for supplemental security

17

income ("SSI") benefits.  The Commissioner of Social Security denied the application.

18

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking

19

judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405

20

(g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On March 30, 2015, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 24).


## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on April 21, 2010, alleging disability beginning October 31, 2008. (T at 158-63).[1]  The application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On October 11, 2012, a hearing was held before ALJ Paul Robeck. (T at 36).  Plaintiff appeared with his attorney and testified. (T at 40-66). The ALJ also received testimony from Paul Morrison, a vocational expert (T at 66-77).

On November 8, 2012, ALJ Robeck issued a written decision denying the application for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (T at 9-35).    The ALJ's decision became the

---

[1] Citations to ("T") refer to the administrative record at Docket No. 11.

Commissioner's final decision on June 26, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On August 26, 2014, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 4). The Commissioner interposed an Answer on November 3, 2014. (Docket No. 10).

Plaintiff filed a motion for summary judgment on January 26, 2015. (Docket No. 16).   The Commissioner moved for summary judgment on March 9, 2015. (Docket No. 19).  Plaintiff filed a Reply on March 23, 2015. (Docket No. 22).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

# III. DISCUSSION

**A.     Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

4

1    416.920(a)(4)(ii).                                    If plaintiff does not

2    have a severe impairment or combination of impairments, the disability claim is

3    denied. If the impairment is severe, the evaluation proceeds to the third step, which

4    compares plaintiff's impairment with a number of listed impairments acknowledged

5    by the Commissioner to be so severe as to preclude substantial gainful activity. 20

6    C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If

7    the impairment meets or equals one of the listed impairments, plaintiff is conclusively

8    presumed to be disabled. If the impairment is not one conclusively presumed to be

9    disabling, the evaluation proceeds to the fourth step, which determines whether the

10   impairment prevents plaintiff from performing work which was performed in the past.

11   If a plaintiff is able to perform previous work, he or she is deemed not disabled. 20

12   C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual

13   functional capacity (RFC) is considered. If plaintiff cannot perform past relevant

14   work, the fifth and final step in the process determines whether plaintiff is able to

15   perform other work in the national economy in view of plaintiff's residual functional

16   capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

17   416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

18

19

20

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.   Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

1    **C.    Commissioner's Decision**

2         The ALJ found that Plaintiff had not engaged in substantial gainful activity

3    since April 20, 2010 (the application date). (T at 14). The ALJ determined that

4    Plaintiff had the following severe impairments: history of polysubstance abuse (in

5    partial remission), anxiety, depression, degenerative disc disease, and obesity. (T at

6    14).

7         However, the ALJ concluded that Plaintiff did not have an impairment or

8    combination of impairments that met or medically equaled one of the impairments set

9    forth in the Listings. (T at 14).

10        The ALJ found Plaintiff had the residual functional capacity ("RFC") to

11   perform light work, as defined in 20 CFR § 416.967 (b), with the following

12   limitations: no climbing of ropes, ladders, or scaffolds; occasional climbing of ramps

13   and stairs, balancing, stooping, crouching, crawling, and pushing/pulling with the left

14   upper extremity; avoid concentrated exposure to environmental extremes; and limited

15   to occasional public contact, with no teamwork. (T at 16).

16        The ALJ determined that Plaintiff could not perform his past relevant work as

17   a security guard. (T at 27). However, considering Plaintiff's age (38 years old on the

18   application date), education (high school), work experience, and RFC, the ALJ

19

20

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 27).

As such, the ALJ concluded that Plaintiff had not been disabled under the Social Security Act from April 20, 2010 (the application date) through November 8, 2012 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 28-29). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.     Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed.  He offers four (4) principal arguments in support of his position.  First, Plaintiff argues that the ALJ did not properly identify all of his severe impairments.  Second, he contends that the ALJ did not correctly assess the medical opinion evidence.  Third, Plaintiff challenges the ALJ's credibility determination.  Fourth, Plaintiff asserts that the ALJ's residual functional capacity finding is flawed.  This Court will address each argument in turn.

### 1.        Step Two Severity Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c).  The fact that a claimant has been diagnosed with and treated for a

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

medically determinable impairment does not necessarily mean the impairment is "severe," as defined by the Social Security Regulations. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). To establish severity, the evidence must show the diagnosed impairment significantly limits a claimant's physical or mental ability to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 416.920(c).

The step two analysis is a screening device designed to dispose of *de minimis* complaints. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).  The claimant bears the burden of proof at this stage and the "severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situation." *Id.*

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

a.    **PTSD**

Dr. Jeffrey Teal, an examining psychologist, performed a psychological assessment in December of 2010.  Dr. Teal diagnosed Post-traumatic stress disorder ("PTSD") – late onset, with panic attacks and agoraphobia and major depressive disorder, recurrent, severe without psychotic symptoms, chronic, without full interepisode recovery. (T at 614).  He assigned a Global Assessment of Functioning ("GAF") score[2] of 50 (T at 614), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).

Dr. James Bailey, a non-examining State Agency review consultant, also noted a diagnosis of PTSD, with panic attacks and agoraphobia. (T at 626).

The ALJ found that Plaintiff's anxiety and depression were severe impairments, but did not list PTSD as a severe impairments (or make a finding that it was not severe). (T at 14).

Although the ALJ should certainly have addressed the PTSD diagnosis, Plaintiff points to no harmful error arising from this omission.  The step two analysis

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

was resolved in Plaintiff's favor, *i.e.* the ALJ concluded that Plaintiff had severe mental health impairments (anxiety and depression), proceeded with the sequential analysis, and incorporated limitations arising from those impairments in the RFC determination. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  While this Court finds other errors with respect to the ALJ's consideration of Plaintiff's mental health impairments (discussed further below), any error with regard to the step two analysis was harmless.

### b.    Carpal Tunnel Syndrome

Dr. Jennifer McCabe Lentz, a treating physician, noted a diagnosis of bilateral carpal tunnel syndrome in August of 2008. (T at 459).  Although Plaintiff had surgery to correct the problem, he continued to complain of pain, number, and tingling in his hands and forearms. (T at 433, 438, 468).  Examining and treating physicians assessed handling limitations related to Plaintiff's hand pain and numbness. (T at 307, 321, 413, 419, 518).

The ALJ did not list carpal tunnel syndrome a a severe impairments (or make a finding that it was not severe). (T at 14).

This Court finds that the ALJ did err in failing to address Plaintiff's carpal tunnel syndrome.  As discussed below, the record contained indications of handling limitations, which the ALJ failed to incorporate into the RFC findings without any

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

explanation to justify his decision.  As such, this Court cannot say with any confidence that the ALJ considered Plaintiff's carpal tunnel syndrome and incorporated any limitations arising from that condition into the RFC determination – the decision is silent and a remand is therefore required.

## 2.    Medical Evidence

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

### a.    Dr. Lentz

In September of 2007, Dr. Jennifer McCabe Lentz, a treating physician, completed a physical evaluation.  She diagnosed low back pain and hypertension. (T at 351).  Dr. Lentz opined that Plaintiff was capable of medium work (meaning the ability to lift 50 pounds maximum and frequently lift/carry up to 25 pounds). (T at

351).  Dr. Lentz described Plaintiff as "doing great," although he still needed narcotics for pain control. (T at 352).

Dr. Lentz performed another evaluation in May of 2009.  She diagnosed low back pain, depression, and headaches. (T at 419).  In this evaluation, Dr. Lentz opined that Plaintiff was limited to light work (meaning the ability to lift 20 pounds maximum and frequently lift/carry up to 10 pounds). (T at 419).

The ALJ discussed Dr. Lentz's September 2007 opinion (which was rendered prior to the application date and alleged onset date) and gave the opinion "some weight." (T at 19).  The ALJ did not specifically address Dr. Lentz's May 2009 opinion, but referenced it by exhibit number, along with other evaluations, and indicated that those evaluations were collectively given "some weight." (T at 19).

If Dr. Lentz's May 2009 opinion had simply assessed an ability to perform light work, this consideration might arguably have been adequate.  However, the opinion contains two important aspects that the ALJ should have addressed.

First, Dr. Lentz noted that Plaintiff had a restriction with regard to handling.[3] (T at 419).  This was a significant finding in light of Plaintiff's carpal tunnel diagnosis,

---

[3]In the Social Security context, "handling" is defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands." *Castro v. Astrue*, 10-cv-01092, 2011 U.S. Dist. LEXIS 87705, at *32-33 (E.D. Cal. Aug. 8, 2011).

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

but the ALJ did not address carpal tunnel during the step two analysis or incorporate any handling limitation into the RFC.  The ALJ did not discuss Dr. Lentz's opinion in any detail and, as such, it is impossible to know whether this aspect of the opinion was considered.

The Commissioner responds that, in another part of the evaluation form, Dr. Lentz made a notation of "e-i," which indicates no restriction with regard to handling. (T at 419).  Even if this apparent inconsistency could serve as a basis for discounting Dr. Lentz's assessment of a handling restriction, the ALJ did not cite this reason (let alone discuss it) in his decision.  "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r*, 554 F.3d 1219, 1226 (9th Cir. 2009)

Second, although Dr. Lentz opined that Plaintiff could perform "light work," she also made the following notation: "no lifting [with] bending, time-limited, uncomfortable." (T at 419).  It is not clear what Dr. Lentz's note means.  The Commissioner suggests it means Plaintiff could not perform lifting with bending, but only for a limited time period (*i.e.* that after a certain – unspecified – time, Plaintiff could perform the full range of lifting consistent with light work).  Plaintiff posits that

Dr. Lentz could have meant that his ability to perform the lifting demands of light work was limited in time – *i.e.* that Plaintiff could only do such lifting on a part-time basis (and not as a part of full-time work) or that he could only perform work that involved lifting part-time and required no lifting with bending whatsoever. The ALJ found that Plaintiff could perform light work and did not incorporate any limitations with regard to lifting with bending or impose any time-limit with regard to Plaintiff's lifting abilities. (T at 16).

The dueling explanations offered by Plaintiff and the Commissioner both have a plausible basis in fact. Normally, this Court would be required under such circumstances to defer to the ALJ's interpretation. However, the ALJ did not specifically discuss Dr. Lentz's opinion and, thus, offered no such interpretation. As noted above, the Commissioner's post-hoc rationalization does not suffice as a matter of law. Accordingly, this Court concludes that the ALJ erred by failing to specifically discuss Dr. Lenz's May 2009 evaluation and, in particular, by failing to address the handling limitation and lifting/bending limitation set forth in the evaluation.

       **b.**      **Ms. Didier and Ms. Jurs, Examining Mental Health Therapists**

In December of 2009, Candi Didier, an examining mental health therapist, performed a psychological evaluation. She diagnosed major depressive disorder,

recurrent severe, and rule/out anxiety disorder. (T at 510).   Ms. Didier assessed marked limitation with regard to Plaintiff's ability to relate appropriately to co-workers and supervisors and moderate limitations with regard to Plaintiff's ability to perform most work-related activities. (T at 511).   She described Plaintiff as "[s]eriously disturbed." (T at 512).   She opined that "it would be difficult for him to tolerate routine work as he barely could tolerate the interview." (T at 511).   Ms. Didier reported that Plaintiff appeared to be having "significant difficulty coping with [his] physical problems and housing," described him as "vulnerable and easily agitated," and opined that she would expect Plaintiff "will continue to decompensate without support." (T at 513).   She assigned a GAF score of 45 (T at 510), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).

In July of 2011, Carol Jurs, another examining mental health therapist, performed a psychological evaluation.   Ms. Jurs diagnosed PTSD, chronic, severe. (T at 694).   She assigned a GAF score of 45 and assessed marked limitations in several domains, including the ability to perform routine tasks without undue supervision and maintain appropriate behavior in a work setting. (T at 694-95).

The evaluations provided by Ms. Didier and Ms. Jurs are considered "other source" opinions.   In evaluating a claim, the ALJ must consider evidence from the

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

claimant's medical sources. 20 C.F.R. §§ 404.1512, 416.912. Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" (also known as "other sources") include nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p.

The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. §§ 404.1527, 416.927.  For example, evidence from "other sources" is not sufficient to establish a medically determinable impairment. SSR 06-03p.  However, "other source" opinions must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions and whether the other source is "has a specialty or area of expertise related to the individual's impairment." *See* SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d).  The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ did not specifically address Ms. Didier's assessment in his decision.  Instead, the ALJ referenced "multiple DSHS [Department of Social and Health Services] Physical and Psychological evaluations documenting [Plaintiff's]

support since 2005 through 2012." (T at 19).   The ALJ explained that he was "generally" giving "little weight" to the mental assessments performed prior to April 21, 2010 (the application date) because they were based primarily on Plaintiff's subjective complaints and were "mostly from less qualified sources." (T at 419).

The ALJ assigned little weight to Ms. Jurs's assessment, finding it "contradicted by the balance of the record." (T at 19).

This Court finds that the ALJ did not provide germane reasons for discounting these "other source" opinions.   In sum, the ALJ afforded relatively greater weight to three assessments from other providers (Dr. Jamie Carter and Dr. Jeffrey Teal), which the ALJ believed supported his conclusion that Plaintiff could handle the mental demands of work-related activity, with the limitation that the work required only occasional public contact and no requirement to work as part of a team.  (T at 16, 19, 26).  However, a review of these providers' evaluations does not provide the requisite support for the ALJ's decision.

Dr. Carter, an examining psychologist, conducted a psychological evaluation in July of 2012 and assigned a GAF of 50 (T at 699), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012).  Dr.

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

Carter noted that Plaintiff "appears able to follow simple instructions" (T at 700) and the ALJ afforded "great weight" to the doctor's assessment (T at 19).

However, the ALJ's RFC determination did not limit Plaintiff to work requiring only simple instructions. (T at 16). Moreover, Dr. Carter referenced Plaintiff's interpersonal problems (i.e. difficulty accepting criticism from supervisors) and memory problems and found it was "[u]nclear to what degree they would interfere with work." (T at 700). Thus, Dr. Carter did not offer an opinion regarding, for example, Plaintiff's ability to handle the stress demands of regular work activity. Indeed, Dr. Carter's decision to assign a GAF score of 50 indicates that he considered Plaintiff's impairments serious. As such, Dr. Carter's evaluation cannot be cited as a reason for discounting, for example, Ms. Jurs's conclusions that Plaintiff had a marked limitation with regard to his ability to perform routine tasks without undue supervision and maintain appropriate behavior in a work setting. (T at 694-95). The ALJ did not discuss these issues in his decision.

Dr. Teal, an examining provider, performed a psychological assessment in December of 2010. The ALJ gave Dr. Teal's assessment "some weight" because it showed Plaintiff was "capable of normal cognitive functioning," (T at 26). However, Dr. Teal assigned a GAF of 50 (T at 613), which, as noted above, is indicative of serious impairment. He reported that Plaintiff met the criteria for PTSD and major

depressive disorder and opined that Plaintiff's symptoms "would adversely impact any work performance at least to a moderate degree." (T at 614).  In January of 2011, Mark Tabor, a physician's assistant and Plaintiff's primary treating professional, stated in a treatment note that he "agree[d]" with Dr. Teal that Plaintiff was "most likely unable to hold any job." (T at 684).  The ALJ cited Dr. Teal's evaluation, which did show a cognitive assessment within the normal range (T at 609), but did not address the concerns raised by Dr. Teal or the consistency between those concerns and the restrictions identified by Ms. Jurs and Ms. Didier.  These failures undermine the ALJ's consideration of the other source opinions (and undermine the ALJ's overall RFC determination) and, thus, a remand is required.

### 3.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows:  He lives alone and has not worked since 2000, except for a very brief period of part-time work. (T at 40).  He is in constant pain, feels significant stress, and has serious anxiety and panic attacks. (T at 42).  Tooth and knee pain are problems. (T at 42).  He goes to the store with his parents and brother about once a month. (T at 45).  Being in public and/or around other people makes him nervous. (T at 45-46).  Frustration leads to an irritable mood and a feeling of being "about ready to explode or hit somebody or something." (T at 48).  He has memory problems. (T at 49).  He believes he would respond negatively to criticism from a supervisor. (T at 49).  On "bad days," he does not even get out of bed, except to use the bathroom. (T at 57).  At least half of his days are "bad days."  (T at 57).  He is afraid that he would become violent if he was forced to be around people more often. (T at 58).

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his testimony concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent alleged. (T at 17).

For the following reasons, this Court finds that the ALJ's credibility analysis is not supported by substantial evidence.  The ALJ's decision is set forth in a rather disjointed fashion and it is not entirely clear that he applied the correct legal standard in assessing Plaintiff's credibility.  It appears the ALJ believed Plaintiff was telling the truth, as he understood it, but rejected his testimony because of the lack of objective medical evidence. (T at 17).   However, an ALJ may not discount a claimant's testimony simply based on a lack of supporting medical evidence. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).

In addition, the ALJ also cited Plaintiff's "manipulative and threatening" relationships with his medical providers.  (T at 23).   The record does document frequent disputes between Plaintiff and his medical providers. (T at 432, 433, 531, 535). However, it is not clear why Plaintiff's difficulties are cited as a basis for discounting his credibility.  Plaintiff testified that he had difficulties managing stress and interacting with others. (T at 45-46, 49, 58).  The ALJ himself found that Plaintiff had "marked difficulties" with regard to social functioning. (T at 15).  In this context,

Plaintiff's problems relating to his medical providers are consistent with the alleged limitations, rather than contrary to them. If the ALJ had addressed this issue and explained why, under these circumstances, Plaintiff's difficulties with medical providers was a basis for discounting his credibility, this Court would be obliged to defer to his judgment. However, the ALJ did not address this problem.

The ALJ also referenced Plaintiff's "history of treatment noncompliance." (T at 23). Again, given Plaintiff's acknowledged difficulty leaving the home and anxiety related to social interaction, an inability to comply with treatment is consistent with (rather than contrary to) the claimed limitations. Further, as a general matter, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

Lastly, the ALJ did not adequately address the consistency between Plaintiff's testimony that he could not handle the stress demands of regular work activity and the assessments of several examining medical providers. Stress is "highly individualized" and a person with a mental health impairment "may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15. As such, the issue of stress must be carefully considered and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC

assessment." *Id.*; *see also Perkins v. Astrue*, No. CV 12-0634, 2012 U.S. Dist. LEXIS 144871, at *5 (C.D.Ca. Oct. 5, 2012).

Here, Ms. Didier assessed marked limitation with regard to Plaintiff's ability to relate appropriately to co-workers and supervisors and moderate limitations with regard to his ability to perform most work-related activities. (T at 511). She opined that "it would be difficult for him to tolerate routine work as he barely could tolerate the interview." (T at 511). Ms. Jurs assessed marked limitations in several domains, including the ability to perform routine tasks without undue supervision and maintain appropriate behavior in a work setting. (T at 694-95). Dr. Teal reported that Plaintiff met the criteria for PTSD and major depressive disorder and opined that Plaintiff's symptoms "would adversely impact any work performance *at least* to a moderate degree." (T at 614)(emphasis added). Mr. Tabor stated that he "agree[d]" with Dr. Teal that Plaintiff was "most likely unable to hold any job." (T at 684). Dr. Bailey, the non-examining State Agency review consultant, generally concluded that Plaintiff could perform work, but assessed a moderate limitation with respect to completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (T at 617-19). Several examining providers (Dr.Teal, Dr.

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB

Carter, Ms. Didier, and Ms. Jur) assigned GAF scores between 45-50, which is indicative of serious symptoms and impairments. (T at 510, 613, 694, 699).

For these reasons, this Court finds that the ALJ's credibility determination cannot be sustained.

### 4.       Step Five/RFC

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a

residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9ᵗʰ Cir. 1984).

Here, the ALJ's step five analysis was based on the testimony of Paul Morrison, a vocational expert. However, the hypotheticals presented to Mr. Morrison did not include, for example, handling limitations, any limitation with regard to lifting and bending, or any limitations with regard to meeting the stress demands of ordinary work activity and/or performing work involving more than simple directions. (T at 67-69). For the reasons outlined above, the ALJ's decision did not satisfactorily address these potential limitations. As such, the step five analysis is likewise flawed and must be revisited on remand.

## C.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful

purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, this Court finds that a remand for further proceedings is warranted.  The ALJ needs to address Plaintiff's carpal tunnel syndrome and the limitations referenced in Dr. Lentz's evaluation.  Additional consideration should be given to the "other source" opinions and, in particular, their consistency with the other evidence regarding Plaintiff's mental health limitations.  The question of Plaintiff's credibility and the step five analysis will likewise need to be revisited on remand.

## IV. ORDERS

IT IS THEREFORE ORDERED that:

Plaintiff's motion for summary judgment, Docket No.  16, is GRANTED.

The Commissioner's motion for summary judgment, Docket No. 19, is DENIED.

This case is remanded for further proceedings,

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff, and close this case.

DATED this 15th day of December, 2015.


                                        /s/Victor E. Bianchini
                                     VICTOR E. BIANCHINI
                          UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – DANLEY v COLVIN 14-CV-03123-VEB